**SO ORDERED.**

**SIGNED this 30th day of September, 2022.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

Leslie M. Landau,

Case No. 20-21114-11

Debtor.

**Memorandum Opinion and Provisional Order
Granting Conversion to Chapter 7**

Debtor Leslie M. Landau filed a subchapter V Chapter 11 case about two years ago. Dr. Landau's case has been plagued with conflict, and with no plan confirmed, Dr. Landau unexpectedly passed away. Multiple creditors and the United States Trustee seek conversion of Dr. Landau's case under 11 U.S.C. § 1112(b).[1] The Court concludes cause exists under § 1112(b), the best

---

[1] All future references to "Bankruptcy Code," "Code," or "§," will refer to Title 11 of the United States Code, unless otherwise noted.

interests of creditors and of Dr. Landau's estate lie in conversion, and Dr. Landau's case should be converted to Chapter 7.

I. **Factual and Procedural Background**

Dr. Landau worked as a surgeon, but was also engaged in other enterprises, one of which was Landau Helicopters, LLC. In December 2017, Landau Helicopters, LLC signed a promissory note with Bank of Kirksville for a loan of $240,075, with Dr. Landau giving a personal guarantee. The loan was secured by a 2002 Robinson Helicopter R44.

Another enterprise of Dr. Landau was a fifty percent ownership interest in EHL, LLC. The holder of the other 50% ownership in EHL, LLC was Robert John "Johnny" Rowlands. On July 23, 2018, one of the creditors of EHL—again, Bank of Kirksville—filed a state court suit against EHL and its guarantors for recovery on certain loans to that enterprise. Both Dr. Landau and the Leslie M. Landau Revocable Trust were named as guarantors on the debt. In August 2018, David Christian's law firm was retained to represent Dr. Landau and the Trust. Mr. Christian has handled all matters in this case.

About a year later, on June 24, 2019, the 2002 Robinson Helicopter R44 related to Landau Helicopters, LLC was destroyed and declared a total loss. Shortly thereafter, on September 13, 2019, the Bank of Kirksville obtained a $794,060.22 judgment against all defendants in its suit against EHL, LLC.

About two weeks after Bank of Kirksville obtained its state court judgment, on September 27, 2019, the Crawford & Company insurance company issued a loss reimbursement check of $225,000 to "Landau Helicopters Inc."

Again, about two weeks later, on October 15, 2019, Dr. Landau made a "deposit of insurance proceeds" of $210,000 to Mr. Christian.[2] The $15,000 difference in funds from the $225,000 issued by the insurance company has not been accounted for. Between October 2019 and May 2020, Dr. Landau "paid" Mr. Christian $75,000 in attorneys' fees via draw down from that $210,000 "deposit." Also from the $210,000, in October through December 2019, $8021.16 was used to make monthly payments on Dr. Landau's debt to Bank of Kirksville. Thereafter, Mr. Christian held the remaining $126,978.84 in his trust account, which he characterized as a "fee advance."[3]

On August 10, 2020, Dr. Landau filed his subchapter V Chapter 11 bankruptcy petition. Shortly after filing, Dr. Landau initiated two adversary proceedings related to the state court litigation centered on EHL and the judgment thereto: one between Dr. Landau and the Bank of Kirksville,[4] and one between Dr. Landau and his co-partner in EHL, Mr. Rowlands.[5] Mr.

---

[2] Doc. 50 p. 5.
[3] Doc. 30 p. 5.
[4] Adv. No. 20-6026.
[5] Adv. No. 20-6027.

3

Case 20-21114   Doc# 328   Filed 09/30/22   Page 3 of 19

Rowlands then filed counterclaims against Dr. Landau in that adversary proceeding.

Dr. Landau timely filed an initial proposed plan of reorganization in November 2020, and multiple objections to confirmation were filed. The parties to the adversary proceedings indicated mediation would be helpful, and in December 2020, the Court ordered Dr. Landau, the Bank of Kirksville, and Mr. Rowlands to mediate their disputes. Mediation was conducted in May 2021, and an amended plan was then filed.

Eventually, after resolving objections by the U.S. Trustee concerning Mr. Christian's lack of disclosure of both his prepetition engagement with Dr. Landau, the deposit of the insurance proceeds, and the pre- and postpetition financial arrangements between Dr. Landau and Mr. Christian, as well as additional supplementation of the record concerning those issues, the Court approved Mr. Christian's employment in this bankruptcy case.[6] Initially, the Court entered a provisional order on the application, noting additional disclosures were required.[7] In the provisional Order, the Court noted the prepetition $210,000 deposit of insurance proceeds and deferred ruling on disposition of the funds:

---

[6] *See* Doc. 30 (Mr. Christian's application to employ, filed two weeks postpetition), Doc. 55 (objection by U.S. Trustee), Doc. 130 (Supplemental Declaration and Engagement Letter), Doc. 141 (Disclosure of Compensation).
[7] Doc. 135 p. 12.

4

> Mr. Christian should keep those funds in his trust account, undisturbed, unless express approval or direction is first received by this Court. The Court has been advised that the two adversaries related to this bankruptcy have been successfully mediated, and the Court suspects that the disposition of funds in Mr. Christian's trust account was one of the subjects of the mediation. The Court will therefore defer ruling on the UST's request that the money be transferred to Debtor's debtor in possession account until after the Court and the UST have had an opportunity to examine the impact of the mediation on these funds.
>
> Once [the debtor/attorney employment contract and a Rule 2016 statement are filed], and the Court can assess the impact of the mediation on the funds, the Court will then enter an Order granting final approval for Mr. Christian's employment and disposition of the funds in the trust account.[8]

After receiving the requested employment contract and Rule 2016 statement, the Court entered a Final Order granting employment, and stated:

> [T]he funds held in Mr. Christian's trust account may remain in that account. As noted in its prior order provisionally granting the application to employ, within fourteen days of the entry of this Final Order, Mr. Christian should file an application for compensation detailing his fees incurred to date. The funds in Mr. Christian's trust account should remain undisturbed unless and until an order is entered awarding compensation to Mr. Christian from those funds.[9]

In the Court's view, the only ruling it made regarding the insurance proceeds was that the Court would decide what to do with them once a claim to the money was made.

---

[8] *Id.* p. 13.
[9] Doc. 143 p. 2.

Mediation of the adversary proceedings was successful. A key part of the parties' settlement was the sale of certain real property, referred to by the parties as the Adair County farm. Auction of the real property was planned to occur in the summer of 2021,[10] but a motion to sell was not actually filed until September 2021.[11] Ultimately the real property was not auctioned until late fall 2021, and the sale did not close until December 2021.

After distribution of proceeds from the sale of the Adair County farm, Dr. Landau filed a second amended plan of reorganization.[12] Before the objection deadline ran to that second amended plan, Mr. Christian notified the Court in June 2022 that Dr. Landau was found deceased. Mr. Christian requested dismissal of Dr. Landau's case,[13] which the Court denied.[14]

A motion to convert was then filed by Mr. Rowlands.[15] Mr. Rowlands sought removal of the subchapter V "small business debtor" designation from the case and appointment of a Chapter 11 trustee, but in the alternative sought to have the case continue in subchapter V and allow the subchapter V trustee to administer the case, or have the Court convert the case to Chapter 7. The U.S. Trustee then filed a motion to dismiss or convert, arguing cause

---

[10] *See* Doc. 155.
[11] Doc. 162.
[12] Doc. 259.
[13] Doc. 275.
[14] Doc. 292.
[15] Doc. 285.

6

exists for dismissal or conversion under § 1112(b) and the best interest of creditors should be assessed to determine if the case should be dismissed or converted.[16] In addition, Cornerstone Bank filed a motion arguing the Court should either revoke the small business designation and subchapter V status of the case and appoint a Chapter 11 trustee, or alternatively, the Court should convert the case to Chapter 7 and allow the parties to elect a Chapter 7 trustee.[17]

On August 12, 2022, Bank of Kirksville filed a motion for relief from stay and adequate protection.[18] Bank of Kirksville argues it has a security interest in the $225,000 insurance proceeds from the prepetition destruction of the helicopter and sought turnover of the $126,978.84 remaining from those insurance proceeds. The Court has entered an order requiring turnover of the $126,978.84 from Mr. Christian's trust account to Bank of Kirksville, to be held in an escrow account until further order of this Court.[19]

The claims remaining in Dr. Landau's case are held in large part by Cornerstone Bank and Bank of Kirksville, with other creditors holding claims in smaller amounts, as follows:

---

[16] Doc. 288.
[17] Doc. 298.
[18] Doc. 301.
[19] Doc. 322.

7

| Creditor | Amount of Claim | Details |
|---|---|---|
| Cornerstone Bank | $692,653.12 | Secured loan on Adair County farm |
|  | $2,105,269.89 | Secured loan on Johnson County real property |
|  | $61,219.42 | Unsecured loan |
| Bank of Kirksville | $251,509.15 | Landau Helicopters, LLC loan, secured by "R44 helicopter." $126,978.84 secured and $124,530.31 unsecured. |
|  | $764,769.59 | Judgment of 9/13/2019, secured by "one R44 helicopter and three R22 helicopters." $105,000 secured and $659,769.59 unsecured. |
| LoanCare, LLC | $260,453.69 | Secured loan on Johnson County real property |
| Crawford & Company | $225,000.00 | Unsecured, stemming from alleged misappropriation of insurance proceeds |
| Equinox, LLC | $158,234.37 | Judgment of 3/5/2020 |
| Martin Pringle Oliver Wallace & Bauer, LLP | $150,454.10 | Unsecured, for services provided |
| Citizens Bank N.A. | $42,133.93 | Secured loan on a vehicle |
| BMO Harris Bank, N.A. | $10,089.15 | Secured loan on a vehicle |
| Johnson County Wastewater | $6173.67 | Unsecured, sewer service |
| DLL Finance LLC | $3753.23 | Secured loan on personal property |
| Discover Bank | $98.14 | Unsecured, credit card |
| First National Bank of Omaha | $52.90 | Unsecured, credit card |

The claimants who have stated a position, Cornerstone Bank, Bank of Kirksville, Crawford & Company, and Martin Pringle Oliver Wallace & Bauer, LLP, all support conversion of this case. Those claimants represent

the vast majority of the claims filed. In addition, the U.S. Trustee supports conversion of this case. And Mr. Rowlands, whose adversary proceeding is related to Dr. Landau's bankruptcy case, supports conversion.

Throughout Dr. Landau's case, he repeatedly failed to file monthly operating reports with the Court.[20] Dr. Landau filed one report for August 2020, the month he filed his petition, but then failed to file additional reports thereafter. The Court noted in January 2021 that monthly operating reports were delinquent,[21] and in February 2021 requested that they be filed "soon."[22] When no reports were filed, the U.S. Trustee then fled a motion to dismiss or convert, noting no operating reports had been filed other than for August 2020, and requesting dismissal or conversion under § 1112(b)(4)(F) for failure to file those reports.[23] Operating reports were then filed and the U.S. Trustee's motion was denied. But then again throughout 2021, Dr. Landau became delinquent on filing complete and accurate operating reports, and the Court held numerous hearings on the matter.[24] Finally in May 2022, Dr.

---

[20] Monthly operating reports are required by § 704(a)(8), made applicable in Chapter 11 by §§ 1106(a)(1) and 1107(a), and by Federal Rule of Bankruptcy Procedure 2015(a)(3).
[21] Doc. 120.
[22] Doc. 123.
[23] Doc. 132.
[24] *See* Doc. 155, Doc. 165, Doc. 171, Doc. 178, Doc. 184, Doc. 192, Doc. 206, Dc. 207, Doc. 228, Doc. 236, Doc. 242, Doc. 244.

Landau filed monthly operating reports for the periods March 2021 through March 2022, but again, the Court has been informed they are deficient.[25]

Recently, Bonsai Capital, LLC, managed by one of Dr. Landau's sons, Kyle Landau, purchased the $764,769.59 claim from Bank of Kirksville based on the state court judgment obtained by Bank of Kirksville in 2019. Bonsai Capital informed the Court that it is working towards purchase of other secured debt from Dr. Landau's case, and hopes to secure dismissal, rather than conversion, of the case. Ruth Landau Vano has also entered an appearance in Dr. Landau's case as his estate's representative. She has informed the Court that a probate case has been opened in state court, and that she prefers dismissal of the case to continue administration therein. Mr. Christian also supports dismissal of the case.

## II. Analysis

Matters concerning the "administration of the estate" are core proceedings under 28 U.S.C. § 157(b)(2)(A), over which this Court may exercise subject matter jurisdiction.[26]

---

[25] *See* Doc. 262.
[26] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

At the outset, the Court notes Federal Rule of Bankruptcy Procedure 1016. Under Rule 1016:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

The Rules are clear that a Chapter 7 case should proceed after the death of a debtor. In Chapter 11 cases, when "further administration is possible and in the best interest of the parties," then the case "may" proceed.

Under § 1112(b)(1),[27] by "request of a party in interest," a court "shall" convert a Chapter 11 to a case under Chapter 7 or dismiss the Chapter 11 case, "whichever is in the best interest of creditors and the estate, for cause."[28] Under § 1112(b)(4), "cause" includes, as pertinent here: "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;" "(F) unexcused failure to satisfy timely any filing or reporting requirement;" and "(J) failure to confirm a plan

---

[27] Section 1112 applies to subchapter V cases because it is not one of the excluded Chapter 11 sections per § 1181.
[28] There are restrictions on conversion in § 1112(b)(2), but no one has argued that they apply here.

11

within the time fixed by this title or by order of the court."[29] The movant under § 1112(b) has the burden of proof.[30]

The Court concludes cause exists to either dismiss or convert. First, cause exists under § 1112(4)(A) because Dr. Landau was not able to propose a confirmable plan during the long pendency of his case, and he is now deceased, meaning there is no ability to earn income to fund a plan to maintain his estate. The U.S. Trustee argues that Dr. Landau was losing money while he was alive and working, and obviously, now that he is deceased, there is no chance of income from Dr. Landau's work as a surgeon. While Dr. Landau's helicopter-related business interests and real estate may produce income in the future, his death has made the ability to rehabilitate his business interests impossible.

In addition, cause exists under § 1112(4)(F) for unexcused failure to file periodic financial reports, as required by § 704(a)(8) and Federal Rule of Bankruptcy Procedure 2015(a)(3).[31] Dr. Landau's failures in this regard are

---

[29] The statutory examples of "cause" are not exhaustive and are disjunctive. *In re Neighbors*, No. 11-21003, 2015 WL 9435189, at *7 (Bankr. D. Kan. Dec. 21, 2015) ("For purposes of conversion or dismissal, cause is defined by § 1112(b)(4), which sets forth a non-exhaustive list of items which constitute cause. The list is read in the disjunctive. This means that cause is established when the existence of any of the items is proven, or the Court otherwise finds cause.").
[30] *In re Helmers*, 361 B.R. 190, 198 (Bankr. D. Kan. 2007).
[31] Section 704(a)(8) is made applicable to Chapter 11 by § 1106(a)(1) (defining the § 704 duties of a trustee) and § 1107(a) (giving a debtor in possession the rights of a trustee, subject to certain limitations not applicable here).

striking: despite repeated extensions, he did not file reports until threat of dismissal, and many of the reports he did file are incomplete. The only excuse provided was that Dr. Landau was not good at, or used to, keeping records. But regarding monthly Chapter 11 financial reports, the Tenth Circuit BAP has stated: "The importance of these monthly report cannot be over-emphasized. 'Without the required reports the creditors are unable to determine if the debtor is exercising its powers in a manner beneficial to them and non-compliance is prejudicial to their interests.'"[32] Dr. Landau had plenty of time to learn how to provide the required information; it was necessary to the survival of his case. Dr. Landau was never straight forward with the Court about his operating reports, his creditors were harmed by the lack of disclosure, and the Court wasted a substantial amount of time babysitting Dr. Landau and his counsel on this simple task.

Finally, cause exists under § 1112(b)(4)(J). Although Dr. Landau did propose a plan in the 90-day window contemplated by § 1189(b) in subchapter V cases, no plan has been confirmed in the two years this case has been pending. With Dr. Landau's death, all parties agree there is no possibility of filing a confirmable plan. Section § 1112(b)(4)(J) provides that cause is

---

[32] *In re Myers*, No. KS-04-054, 2015 WL 1324019 (10th Cir. BAP May 25, 2005) (quoting *In re Modern Office Supply, Inc.)*, 28 B.R. 943, 945 (Bankr. W.D. Okla. 1983)).

present when there is "failure . . . to file or confirm a plan, within the time fixed by this title or by court order." Although the circumstances of this case "do not strictly constitute cause as defined by § 1112(b)(4)(J)" because no deadline for confirming a plan was fixed by the Court, the circumstances present herein "clearly point to cause."[33] This is a subchapter V case, and is meant to proceed quickly to confirmation and rehabilitation. Dr. Landau or his counsel never gave the case the time or attention it deserved to make that happen.

The Court next turns to a balancing test, to determine whether dismissal or conversion is in the best interest of creditors and the estate.[34] Courts considering this question look at a range of factors to determine which choice to make:

> "(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
> (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
> (3) whether the debtor would simply file a further case upon dismissal;
> (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

---

[33] *In re Neighbors*, 2015 WL 9435189, at *7 (finding cause under § 1112(b)(4)(J) when Chapter 11 case had been pending four and one-half years without a confirmed plan).

[34] *Id.* at *9 ("The Code does not define the phrase best interests of creditors and the estate. The standard implies a balancing test to be applied through case-by-case analysis. In the end the determination is a matter for sound judicial discretion." (internal quotations omitted)).

14

Case 20-21114    Doc# 328    Filed 09/30/22    Page 14 of 19

(5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
(6) whether any remaining issues would be better resolved outside the bankruptcy forum;
(7) whether the estate consists of a "single asset,"
(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
(9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and
(10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns."[35]

A court has "broad discretion" to determine whether dismissal or conversion is appropriate.[36]

In this case, all the factors that are applicable weigh in favor of conversion to Chapter 7. Creditors, and the Court, are concerned about the prepetition "deposit" of insurance money in Mr. Christian's trust account. All creditors who have stated a position are seeking conversion rather than dismissal. A Chapter 7 trustee can determine whether there was debtor misconduct in the acquisition and distribution of that money. Of the $225,000 issued, $15,000 is unaccounted for. Another $8021.16 was used to pay down the Bank of Kirksville debt. And then $75,000 was used to pay Mr. Christian for prepetition fees. Only $126,978.84 remains. A Chapter 7 trustee can

---

[35] 7 *Collier on Bankruptcy* ¶ 1112.04[7] (Richard Levin & Henry J. Sommer eds., 16th ed.).
[36] *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989).

15

investigate and determine who is entitled to the money and whether any Chapter 5 causes of action exist. In addition, with Dr. Landau's death, his bankruptcy estate must now be liquidated, and Chapter 7 trustees are experts at doing so. Dismissing the case now would harm creditors who have been patiently waiting, or who thought their issues were mediated, only to never see a plan confirmed.

The argument made against conversion, and for dismissal, is that potential Chapter 7 trustee and counsel fees would be too costly and would diminish returns to creditors. But an orderly, court-supervised liquidation maximizes the estate's value. This court is well-versed in the history of the case, and Chapter 7 trustees are adept at quickly gathering knowledge and documents to expeditiously work a case. No party benefits by a lengthy liquidation, and this Court will ensure there is not one.

In addition, Mr. Christian and Ms. Vano argue the case of a deceased debtor cannot be converted to Chapter 7, because a deceased individual cannot be a debtor under Chapter 7.[37] Under § 1112(f), "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." But as noted above, the Code permits

---

[37] The argument is that a deceased person is not a "person" within the meaning of § 101(41), which defines "person" to include an "individual, partnership, and corporation." Under § 109(b), only "a person" may be a debtor under Chapter 7.

16

conversion when it "is in the best interests of creditors and the estate," and Rule 1016 permits a bankruptcy case to "proceed and be concluded in the same manner . . . as though the death . . . had not occurred" if "further administration is possible and in the best interest of the parties." The Court has concluded further administration in a Chapter 7 case is in the best interest of the parties, and therefore agrees with the case law[38] permitting conversion of Chapter 11 and Chapter 13 debtors to Chapter 7 after the debtor is deceased.[39]

### III. Conclusion

The Court concludes cause exists to dismiss or convert this case under § 1112(b), and that conversion to Chapter 7 is in the best interests of creditors and the estate. As a result, the Court provisionally grants those portions of

---

[38] *E.g.*, *Brown v. Sommers (In re Brown)*, 807 F.3d 701, 709 (5th Cir. 2015) (conversion of individual Chapter 11 debtor's case to Chapter 7 after debtor's death); *In re Roberts*, 570 B.R. 532, 541 (Bankr. S.D. Miss. 2017) (conversion of Chapter 13 debtors to Chapter 7 after debtor-husband's death); *In re Hamilton*, 274 B.R. 266, 266 (Bankr. W.D. Tex. 2001) (noting, without discussion, conversion to Chapter 7 after death of one debtor).

[39] For similar reasons, this Court does not follow the requested approach of some creditors, who seek an order revoking the subchapter V designation of this case and appointing a Chapter 11 trustee. *See, e.g.*, *In re Nat'l Small Bus. All., Inc.*, No. 21-00031-ELG, 2022 WL 2347699 (Bankr. D.D.C. June 29, 2022) (using § 105(a) powers to revoke a subchapter V election and appointing a trustee under § 1104(a) because it was "in the best interest of creditors and the estate that the Debtor remain in chapter 11 rather than liquidate under chapter 7 or be dismissed"). This is an individual case, and does not involve an ongoing business concern, and the Court has concluded it is in the best interest of creditors and the estate to proceed through an orderly liquidation under Chapter 7.

17

the pending motions seeking such conversion to Chapter 7 and denies the remainder of the motions.[40]

This Memorandum Opinion is a provisional Order. It will become final by entry of a final Order on October 21, 2022, at 11:00 a.m. local time. Upon entry of a final Order at that point, Dr. Landau's case shall be converted to Chapter 7 of the Bankruptcy Code. The Court denies the motion of Bonsai Capital seeking a continuance of the Court's consideration of the conversion or dismissal issue.[41] If Bonsai Capital can secure agreements, prior to October 21, that would drastically alter the Court's analysis herein, it is free to do so, and should file a motion so alerting the Court if it does so by that deadline. Dr. Landau has been deceased for more than three months; the Court does not want to delay this issue any further.

On or before November 3, 2022, all estate professionals must file final fee applications in this bankruptcy case, or they will be barred from filing a fee application in the future.

The Court has already entered an Order requiring the transfer of $126,978.84 from Mr. Christian to the Bank of Kirksville. The substantive issue of the rightful claimant to that money remains for decision. The Court sets this case for a status conference on November 10, 2022, at 10:30 a.m., at

---

[40] Doc. 285, Doc. 288, Doc. 298.
[41] Doc. 319.

which time the Court will inquire if any discovery is needed on the matter and set a briefing and trial schedule.

**It is so Ordered.**

# # #